| Claiborne County | STATE OF TENNESSEE<br>CIVIL SUMMONS<br>page 1 of 1 | Case Number<br>CV-2665 |
|---|---|---|
| Makenzie Hunt Vs. LMU, et al. | | |

Served On:
Lincoln Memorial Univ. L.M.U. agent for Service Jason McConnell
6965 Cumberland Gap Pkwy Harrogate TN 37752

You are hereby summoned to defend a civil action filed against you in Circuit Court, Claiborne County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: 10-20-25

D Spaulding
Clerk / Deputy Clerk

Attorney for Plaintiff: ______________________

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to ______________, ______________ Clerk, ______________ County

## CERTIFICATION (IF APPLICABLE)

I, ______________, ______________ Clerk of ______________ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: ______________

Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: ______________

Date: ______________

By: ______________
Please Print: Officer, Title

Agency Address

Signature

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on ______________, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant ______________. On ______________ I received the return receipt, which had been signed by ______________ on ______________. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: ______________

Notary Public, Deputy Clerk (Comm. Expires ______________)

Signature of Plaintiff

Plaintiff's Attorney (or Person Authorized to Serve Process)

**(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call* ______________ ______________.

EXHIBIT
tabbies
A

*Rev. 03/11*

IN THE CIRCUIT COURT OF CLAIBRONE COUNTY, TENNESSEE

| | | |
|---|---|---|
| **MACKENZIE HUNT,**<br><br>Plaintiff,<br><br>v.<br><br>**LINCOLN MEMORIAL UNIVERSITY and RICHARD A. GILLISPIE COLLEGE OF VETERINARY MEDICINE,**<br><br>Defendants. | ) | Docket No.: CV-2665<br>**JURY DEMANDED**<br><br>FILED<br>Claiborne County Circuit Civil Court<br>OCT 20 2025<br>Jackie Rosenbalm, Clerk<br>DS, DC |

## COMPLAINT FOR DAMAGES

Comes now the Plaintiff, MacKenzie Hunt, by and through counsel of record, R. Douglas Hanson, II, and files this Complaint for Damages against Defendants, Lincoln Memorial University and Richard A Gillispie College of Veterinary Medicine ("Defendants). Plaintiff will affirmatively establish the following in support of her claims:

### NATURE OF CASE

(1) Plaintiff's claims against Defendants are predicated upon violations of the Americans with Disabilities Act, Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Breach of Contract and Bad Faith Breach of Contract.

(2) Plaintiff was a first-year student at Lincoln Memorial University ("LMU") in the Richard A. Gillispie School of Veterinary Medicine ("CVM") ("Defendants") studying for her Doctorate of Veterinary Medicine degree. She began classes on August 3, 2022. She was medically diagnosed with ASD and/or Aspergers. She disclosed her diagnosis and requested

accommodations in her admission paperwork. Plaintiff was transparent with Defendants about her ASD and/or Aspergers which are disabilities covered by and afforded protection under the ADA.

(3) In August 2022, Plaintiff received a test score that her professor admitted had a grading error. The professor failed to correct the score as promised and Plaintiff sent repetitive emails inquiring about the promised correction. The professor was annoyed with the "frequent emails." Plaintiff met with the Dean and Director of Veterinary Medicine and both the Dean and Director agreed that the email communication/behavior issue was caused solely by Plaintiff's ASD and/or Aspergers. Plaintiff was instructed and Plaintiff agreed to try and meet with professors in person, when possible, in lieu of sending "frequent emails."

(4) On October 13 or 14, 2022, Plaintiff was unknowingly exposed to a student with Covid while attending class with that student. Defendants knew the student had Covid and instructed the student not to attend classes, but Defendants did nothing to ensure the student did not attend classes. On October 14, Plaintiff arrived home at 10:20 p.m. from Anatomy Lab feeling exhausted and the onset of Covid-like symptoms. Plaintiff had difficulty sleeping that night and awoke at 7:15 a.m. feeling exhausted. She was supposed to attend Kennel class at 6:45 that morning. Plaintiff emailed her professor, Director Carney and her Kennel class tech at 7:15 a.m. and sought assistance from a student group text about what to do. Plaintiff did not send another email after her professor failed to respond for 2 to 3 hours and then drove to the Kennel to find someone to speak with about her situation exactly as Plaintiff had been instructed in August. She found no one at the Kennel. The a.m. attendance sheet had been replaced with a p.m. attendance sheet for the p.m. Kennel class. Plaintiff left her phone in her car because phones were not permitted in the Kennel. She was unaware of the time and proceeded to document her situation in the p.m. attendance sheet. She wrote 7:45, the time her class ended, in the arrival time space and under

Notes stated that she emailed at 7:15 and went by Kennel after missing class to let someone know what was going on. Plaintiff tested positive on October 16 for a respiratory infection, but it was too early to detect Covid given her recent exposure.

(5) Plaintiff knew she "had a target on her back" since the August 22 meeting with the Director and the Dean. They were annoyed by her communication issues, behaviors, mannerisms and idiosyncrasies caused solely by her ASD and/or Aspergers. They viewed her ASD and/or Aspergers' symptoms as making her unprofessional and not LMU/CVM doctoral candidate material. Defendants dismissed Plaintiff on October 21, but offered no reasons for the dismissal in the October 21 dismissal correspondence. Plaintiff tried, but was unable to get specific reasons for her dismissal prior to her appeal. Plaintiff appealed without knowing the specific reasons for her dismissal. Her Appeal was denied. Plaintiff continued to request the reasons for her dismissal. Defendants sent Plaintiff a correspondence on November 1 proffering three (3) written reasons for her dismissal and reminding her that her appeal was resolved and over. Plaintiff was effectively denied an opportunity to appeal or challenge the actual proffered reasons for her termination as they were kept from her until after her appeal was denied.

(6) The 3 proffered reasons for Plaintiff's dismissal failed to delineate what honor code provisions were violated, what conduct violated any honor code provisions and what date any of the offending behavior/conduct allegedly occurred. Defendants accused Plaintiff of "falsification of medical records," but Plaintiff did not enter any information on any medical records on October 15. The other 2 reasons for her dismissal were predicated upon the email communication issues she had in August, which the Dean and Director found were behaviors caused solely by Plaintiff's ASD and/or Aspergers and, therefore, could not serve as a basis for her October 21 dismissal without violating the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(7) Defendants proffered reasons for Plaintiff's dismissal were false and a pretext for discrimination. Plaintiff was terminated based solely on behaviors and/or communication issues caused solely by her ASD and/or Aspergers. Defendants were annoyed with Plaintiff and considered Plaintiff unprofessional due to communication issues and behaviors caused solely by her ASD and/or Aspergers. Defendants' dismissal of Plaintiff was a violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act. Defendants' failure to provide the reasons for Plaintiff's dismissal until after her rights to appeal were exhausted rendered the appeal void ab initio thereby vitiating Plaintiff's October 21 dismissal. Defendants' also actions constituted breach of contract and bad faith breach of contract. Defendants' Student Handbook creates a contractual obligation upon Defendants to not dismiss students in manner that violates the ADA, Title III of the ADA & Section 504 of the Rehabilitation Act. See (Ex. 1, App. E, P. 117). Pursuant to Tenn.R.Civ.P. 10.03, Exhibit # 1 is the August 2022 Student Handbook (comprised of 156 pages) and the entire document is in possession of both Defendants and may also be accessed on Defendants' website.

## PARTIES

(8) MacKenzie Hunt is a resident of Virginia Beach, Virginia.

(9) Lincoln Memorial University ("LMU") is a Tennessee Nonprofit Corporation with a principal place of business at 6965 Cumberland Gap Parkway, # 2003, Harrogate, Tennessee 37752. The agent for service of process is Jason McConnel and he may be served at 6965 Cumberland Gap Parkway, Harrogate, Tennessee 37752.

(10) Richard A. Gillispie College of Veterinary Medicine ("CVM") is a division/department of Lincoln Memorial University and, as such, is a Tennessee Nonprofit Corporation with a principal place of business at 6965 Cumberland Gap Parkway, # 2003,

Harrogate, Tennessee 37752. The agent for service of process is Jason McConnel and he may be served at 6965 Cumberland Gap Parkway, Harrogate, Tennessee 37752.

(11) Liability between LMU and CVM is joint and several and both Defendants are vicariously liable for its agents, employees and/or independent contractors including, but not limited to, Director of Veterinary Medicine Kimberly Carney ("Director Carney") and Dean of Veterinary Medicine Stacy Anderson ("Dean Anderson").

## JURISDICTION AND VENUE

(12) This Court has subject matter jurisdiction over this matter pursuant to Tenn. Code Ann. § 16-10-101, *et seq*.

(13) This Court may exercise personal jurisdiction over Defendants because they reside, transact business and/or have committed one or more of the acts that give rise to this lawsuit in Harrogate County, Tennessee.

(14) Venue is proper in this Court pursuant to Tenn. Code Ann. § 20-2-201, *et seq.*

## DEFENDANTS

(15) "Defendants," for purposes of the allegations contained in this Complaint, for Damages and/or for purposes related to imposition of liability for LMU and CVM include, but is not necessarily limited to, all faculty, employees, agents and/or independent contractors actings on behalf of, to the benefit of, in furtherance of the business of, at the direction of and/or at acquiescence of Defendant LMU and/or Defendant CVM.

## FACTUAL BACKGROUND

(16) Plaintiff had an excellent academic record throughout her entire educational background and history.

(17) Plaintiff attended Cox High School in Virginia Beach, Virginia, and graduated from Cox High School in 2015 with an advanced studies diploma and a 4.1 GPA.

(18) Plaintiff attended Christopher Newport University from 2015 through 2019 where she earned a Bachelor's of Science degree with a major in Molecular Biology and a minor in Leadership Studies.

(19) Plaintiff graduated from Christopher Newport University with a cumulative GPA of 3.3.

(20) Plaintiff attended graduate school from August 2019 through May 2021 at Eastern Virginia Medical School.

(21) Plaintiff earned a Master's of Public Health degree in Epidemiology from Eastern Virginia Medical School.

(22) Plaintiff graduated in the top 10% of her class at Eastern Virginia Medical School with a 4.0 GPA.

(23) Plaintiff received an induction into the John Hopkins honor society for her excellent academic achievements at Eastern Virginia Medical School.

(24) Plaintiff worked full-time during her Master's Degree coursework.

(25) Plaintiff continued to work approximately one (1) to two (2) years after she obtained her Master's Degree and began working on veterinary school applications during that time period.

(26) Plaintiff's childhood goal and desire was to become a Doctor of Veterinary Medicine.

(27) Plaintiff loves animals, worked hard, studied hard and saved money so she could achieve her childhood dream of becoming a Doctor of Veterinary Medicine.

(28) Plaintiff submitted applications to approximately 10 veterinary school programs to obtain her Doctorate in Veterinary Medicine.

(29) Plaintiff's applications to the veterinary schools were submitted on or before September 15, 2021.

(30) Plaintiff was offered interviews in eight (8) out of the 10 veterinary schools to which she submitted applications.

(31) Plaintiff was immediately accepted to four (4) programs and wait listed at five (5) or six (6) of the remaining Doctorate of Veterinary Medicine programs to which she applied.

(32) Plaintiff selected Defendant, Lincoln Memorial University's Doctorate of Veterinary Medicine program offered at its Richard A. Gillispie School of Veterinary Medicine.

(33) Plaintiff selected Defendants' Doctorate of Veterinary Medicine program as it was close to her home and parents, it was out in the country, Plaintiff grew up riding horseback and Plaintiff loved the idea of serving an underserved area.

(34) Plaintiff relocated to Harrogate, Tennessee, and moved into a rental house near Defendants' campus in Harrogate, Tennessee.

(35) Plaintiff resided with two (2) roommates, both of whom were also students in Defendants' veterinary school.

(36) Plaintiff began school at Defendants on August 3, 2022.

**<u>Plaintiff's Disabilities Covered by ADA</u>**

(37) Plaintiff has been diagnosed and suffered from health condition(s) recognized as disabilities covered by and afforded protection under the American with Disabilities Act ("ADA"), Title III of the ADA and Section 504 of the Rehabilitation Act.

(38) Plaintiff has been diagnosed by several medical professionals with autism spectrum disorder ("ASD") and/or Aspergers.

(39) Both ASD and/or Aspergers are a disability covered by the ADA.

(40) Both ASD and/or Aspergers impacts, at times, the manner in which Plaintiff communicates with others.

(41) Both ASD and/or Aspergers impacts, at times, Plaintiff's behaviors.

(42) Both ASD and/or Aspergers impacts, at times, Plaintiff's perceptions.

(43) The following is a nonexclusive list of behaviors and/or symptoms associated with ASD and/or Aspergers and that ASD and/or Aspergers can cause:

> (a) Both ASD and/or Aspergers can, at times, result in Plaintiff experiencing difficulty understanding and interpreting social cues, making it difficult for Plaintiff to develop and maintain relationships with peers;
>
> (b) Both ASD and/or Aspergers can, at times, cause Plaintiff to struggle with both verbal and non-verbal communication, including understanding sarcasm and body language;
>
> (c) Both ASD and/or Aspergers can, at times, cause overstimulation from certain sounds, lights or textures, which can be overstimulating in a classroom setting;
>
> (d) Both ASD and/or Aspergers can, at times, create challenges with organization, time management and problem solving, affecting the ability to remain focused and complete tasks interpedently; and
>
> (e) Both ASD and/or Aspergers can result in struggles with abstract concepts and visual representations which can complicate learning and comprehension.

(44) Schoolroom challenges encountered by some students having ASD and/or Aspergers include, but is not necessarily limited to, the following:

> (a) Hypersensitivity (over-responsiveness) or hyposensitivity (under-responsiveness) to sensory stimuli like sounds, lights, textures, and smells;
>
> (b) Difficulties with planning, organization, working memory, cognitive flexibility, and inhibitory control;
>
> (c) Variations in understanding and using verbal and non-verbal communication cues, including interpreting social situations and reciprocating in conversations;

(d) Intense focus on specific topics or activities, and engagement in repetitive motor movements or speech patterns (stimming); and

(e) May struggle with abstract concepts or prefer visual learning styles.

(45) Despite the struggles and challenges ASD and/or Aspergers may cause a student in the educational setting, Plaintiff was able to graduate high school with a 4.1 GPA and undergraduate school with a 3.3 GPA.

(46) Despite the struggles and challenges a student with ASD and/or Aspergers may encounter in the educational setting, Plaintiff graduated in the top 10% of her Master's Degree class at Eastern Virginia Medical School with a 4.0 GPA.

(47) Notwithstanding Plaintiff's struggles and challenges as a student with ASD and/or Aspergers, Plaintiff was inducted into the John Hopkins honor society.

(48) Despite Plaintiff's hard work and outstanding achievements in High School, Undergraduate and Graduate/Medical School Master's Degree all of which reflect her ability to overcome any challenges and struggles related to her ASD and/or Aspergers, Defendants became frustrated and annoyed by her ASD and/or Aspergers disability related symptoms and gave up on Plaintiff during her very first semester.

(49) Defendants dismissed/expulsed Plaintiff for petty, pretextual, false and/or fabricated reasons all predicated solely upon challenges encountered by and behaviors caused solely by Plaintiff's ASD and/or Aspergers, none of which caused harm to anyone.

(50) Defendants dismissed/expulsed Plaintiff as a result of behaviors perceived as allegedly unprofessional or lacking "professionalism" caused solely by Plaintiff's ASD and/or Aspergers all of which amounted only to mere annoyances for Defendants' faculty.

**Plaintiff's Disclosure of Her ADA Covered Disability and Requested Accommodations**

(51) Aspergers is a condition within the purview of ASD for purposes of disability classification under the ADA.

(52) Plaintiff disclosed her ASD and/or Aspergers to Defendants at the time of admission with submitted forms and/or written documentation describing her condition and certain accommodations that may be necessary.

(53) Plaintiff discussed her ASD and/or Aspergers diagnosis with Defendants' faculty.

(54) Plaintiff was always transparent with Defendants or with whomever she spoke regarding her ASD and/or Aspergers.

(55) Plaintiff requested accommodations and never tried to conceal her disability from Defendants and Defendants' faculty.

(56) Plaintiff disclosed her ASD and/or Aspergers to the Dean of the Veterinary of Medicine School, Stacy Anderson, prior to or in August of 2022.

(57) Plaintiff disclosed her ASD and/or Aspergers to the Director of the Veterinary School, Kimberly Carney, prior to or in August of 2022.

(58) Defendants had notice of and knew of Plaintiff's ASD prior to any adverse actions being taken against Plaintiff.

(59) Defendants had notice of and knew of Plaintiff's Aspergers prior to any adverse actions being taken against Plaintiff.

(60) Defendants knew ASD was a disability within the purview of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(61) Defendants knew that ASD was a protected disability under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(62) Defendants knew that Aspergers was a disability within the purview of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(63) Defendants knew that Aspergers was a protected disability under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(64) Defendants knew that behaviors caused solely by ASD were protected by the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(65) Defendants knew that behaviors caused solely by Aspergers were protected by the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(66) Defendants knew that dismissing/expulsing a student for behaviors and/or communication issues caused solely by a student's ASD violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(67) Defendants knew that dismissing/expulsing a student for behaviors and/or communication issues caused solely by a student's Aspergers violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(68) Defendants knew that the following behaviors may be exhibited by students in the classroom having ASD and/or Aspergers:

> (a) Repetitive behaviors such as sending multiple, frequent and/or repetitive emails and/or text messages over an issue that may upset the student;
>
> (b) Social communication difficulties including challenges in maintaining conversation and understanding nonverbal cues;
>
> (c) Engaging in routine behaviors that may seem unusual or unwarranted;
>
> (d) Intense focus on specific interest or having a strong interest in particular topics, especially those topics or issues that may upset the student such as errors made by University's grading system and professor's failure to correct Plaintiff's grade as promised; and

(e) Disruptive behaviors when student feels overwhelmed or frustrated such as the incident regarding the promised grade correction/adjustment for Plaintiff's Veterinary Physiology test that did not occur.

(69) It is incumbent upon Defendants to recognize behaviors and/or communication issues caused by ADA covered disabilities.

(70) It is duty of Defendants' faculty to recognize behaviors associated with ADA covered disabilities.

(71) Defendants have a duty to accommodate students with disabilities covered by the ADA.

(72) Defendants violate the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act by dismissing a student based solely upon behaviors and/or communication issues caused solely by disabilities covered by the ADA.

(73) Defendants knew that Plaintiff's ASD and/or Aspergers could, at times, have a direct or indirect impact on the manner in which Plaintiff communicated.

(74) Defendants violate the ADA, Title III of the ADA and/or Section 504 of the Rehabilitation Act for dismissing a student with ASD and/or Aspergers for behaviors caused solely by ASD and/or Aspergers.

(75) Defendants violate the ADA, Title III of the ADA and/or Section 504 of the Rehabilitation Act by dismissing a student with ASD and/or Aspergers for communication issues caused solely by ASD and/or Aspergers.

**<u>Veterinary Physiology Professor's Failure to Correct Test Score Grading Error as Promised Triggered ASD and/ Asperger Related Behavior/Communication Issues</u>**

(76) In August of 2022, Plaintiff took a Veterinary Physiology test.

(77) Plaintiff's first attempt at her Veterinary Physiology test in August 2022, resulted in a passing grade of a C.

(78) Students unhappy with the initial test grade in Plaintiff's Veterinary Physiology class were permitted to retake the test.

(79) Plaintiff retook the test in hopes of improving her grade.

(80) At the time, Plaintiff was unaware that the retest would be considerably more difficult than the initial test.

(81) The second test was more difficult than the first test Plaintiff took.

(82) Plaintiff scored a high D on the second test.

(83) The Veterinary Physiology professor later informed the class that certain questions on the test were graded improperly by an automated grading system.

(84) The Veterinary Physiology professor advised the class and Plaintiff that a four (4) point adjustment would be made if a student was graded improperly.

(85) The four (4) point increase would have raised Plaintiff's second test score from a D to a C and passing grade.

(86) The Plaintiff and the Veterinary Physiology professor met in the professor's office.

(87) Plaintiff was advised during this meeting that her test score would be increased by four (4) points.

(88) The professor told Plaintiff that the four (4) point increase in her test score would be posted by that Friday.

(89) Plaintiff checked online Friday to see if her test score was increased by four (4) points as promised.

(90) Plaintiff's test score had not been increased.

(91) Plaintiff emailed her professor to find out why the grade was not increased.

(92) Plaintiff then sent what was described by Defendants as frequent emails to the Veterinary Physiology professor regarding her promised grade adjustment and/or back and forth email dialogue concerning the grade adjustment.

(93) Plaintiff's emails to the Veterinary Physiology professor were not mean spirited, threatening, abusive or foul.

(94) Plaintiff sent approximately three (3) emails in a back-and-forth dialogue discussing correction of her test score and asking why the professor was no longer correcting her test score.

(95) Plaintiff's repetitive or frequent emails to the professor annoyed the professor.

(96) The professor reported the repetitive or frequent emails to Dean Stacy Anderson and/or Director Kimber Carney.

(97) Plaintiff had a conference with her Veterinary Physiology professor, Dean Anderson and Director Carney.

(98) Plaintiff's ASD and/or Aspergers was discussed during this meeting.

(99) Director Carney and Dean Anderson informed Plaintiff that the repetitive or frequent emails to her professor was unprofessional.

(100) The concerns articulated to Plaintiff was that her email and/or text message frequency was too frequent or too numerous at times.

(101) No other concerns about Plaintiff's communication or behavior were brought to her attention as a problem during this August 2022 meeting.

(102) No other concerns about Plaintiff's communication or behavior were brought to her attention between the August meeting about frequent emails and the October 21 dismissal/expulsion of Plaintiff.

**Behavior and Communication Issues in August 2022**
**Were Caused Solely by Plaintiff's ASD and/or Aspergers**

(103) During the August 2022 meeting, Plaintiff, Dean Anderson and Director Carney discussed Plaintiff's ASD and/or Aspergers and how that might have impacted her email communication, email frequency, text frequency to students and/or email behavior related to the promised grade adjustment issue.

(104) Dean Anderson and Director Carney concluded that Plaintiff's communication/behavior issues, repetitive emails, email frequency and/or text frequency was caused solely by Plaintiff's ASD and/or Aspergers.

(105) No disciplinary action was taken against Plaintiff in August 2022, because Defendants recognized that Plaintiff's behavior and/or communication issues were caused solely by Plaintiff's ASD and/or Aspergers covered by the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(106) Plaintiff was cautioned to be mindful of her email and/or text communication frequency and to avoid sending too many emails to professors.

(107) Plaintiff was encouraged to meet with Professors in person, when possible, to avoid frequent emails.

(108) Plaintiff complied with the requests and/or "Plan of Action" made by Director Carney and Dean Anderson during the August 2022 meeting and was not confronted about email frequency, text frequency or communication/behavior issues again between the August 2022 meeting and the October 21, 2022, dismissal/expulsion.

**Defendants Viewed Plaintiff in a Negative Light and Were Quick to Criticize Plaintiff as "Lacking Professionalism" Due Solely to Plaintiff's ADA Covered Disability**

(109) Plaintiff felt as if she "walking on eggshells" after the August 2022 meeting with Carney and Anderson due to the manner in which she was treated.

(110) Plaintiff started school on August 3, 2022, and immediately encountered two (2) unusual situations involving her being bullied by a roommate that was also bullying other students and having a grading error on her Veterinary Physiology test caused by an automated grading system.

(111) Carney and/or Anderson managed to focus on and find fault with Plaintiff and failed to provide Plaintiff with any assistance or support as to her being bullied and the test score grading error.

(112) Plaintiff's Veterinary Physiology professor had promised to correct Plaintiff's grade and reneged on the promise by failing to correct the test score and post the corrected test score.

(113) Carney, Anderson and Plaintiff's Veterinary Physiology professor met, discussed the test score error and the focus immediately shifted from correcting the grading error to the professor's annoyance by an email exchange between Plaintiff and the professor.

(114) The Veterinary Physiology professor was annoyed by a series of approximately three (3) emails wherein Plaintiff politely and appropriately challenged the professor for not correcting the test score as promised.

(115) Carney and/or Anderson discounted everything Plaintiff said about the test score grading error and her professor's promise to correct the grading error.

(116) Carney and/or Anderson sided with the professor without looking into the matter, reviewing the test and/or reviewing the test responses that had grading errors due to the automated grading system.

(117) Carney and/or Anderson focused solely on criticizing Plaintiff's "frequent emails" or Plaintiff's communication/behavior issues for allegedly "lacking professionalism" that all admitted were caused solely by Plaintiff's ASD and/or Aspergers.

(118) Although the promised grade correction would have raised Plaintiff's D (failing) to a C (passing), Plaintiff completely dropped the issue to avoid further controversy in the meeting as

Defendants were clearly annoyed with her and made Plaintiff feel as if they were looking for reasons to kick her out for not being professional and/or proper LMU/CVM material.

(119) Carney and/or Anderson seemed frustrated that they could not punish or take further action against Plaintiff because the behavior they viewed as lacking the "professionalism" and that they expected of LMU/CVM students was a behavior caused solely by Plaintiff's disability afforded protection under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(120) Carney and Anderson discussed Plaintiff's ASD and/or Aspergers with Plaintiff and, while agreeing Plaintiff's communication/behavior issues were caused solely by Plaintiff's ASD and/or Aspergers, Plaintiff was made to feel less than, ashamed and worried about her future at LMU/CVM during the August 2022 meeting.

(121) There was never any specific, official or written "Plan" or "Plan for Improvement" implemented during the August 2022 meeting as later suggested in and referenced by Defendants' three (3) written reasons for Plaintiff's October 21 dismissal provided to Plaintiff on November 1,

(122) Defendants' recommendation that Plaintiff meet her professors in person in lieu of sending what Defendants classified as "frequent emails" was the only recommendation, guidance or instruction Plaintiff received from Defendants that could be viewed, perceived or interpreted as a "Plan for Improvement."

(123) Defendants on November 1 cited three reasons for Plaintiff's dismissal/expulsion and third reason stated as follows:

> 3. Absence of growth in level of professionalism after she had been warned by the administration and provided a specific plan for improvement."

See (E 2, Carny Correp.).

(124) In regards to reason three (3) for Plaintiff's October 21 dismissal/expulsion, Defendant provided no specific facts regarding when Plaintiff was warned, why she was warned, when the alleged

"Plan for Improvement" was implemented, what the "Plan for Improvement" stated and how Plaintiff violated the "Plan for Improvement." See Id.

(125) Defendant did not explain the facts or circumstances of reason (3) of Plaintiff's dismissal because reason (3) attempted to use the August 2022 incident related to communication/behavior issues caused solely by Plaintiff's ASD and/or Aspergers and Defendant's use of that to form a basis of her dismissal violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(126) Defendants' three (3) written reason for Plaintiff's dismissal/expulsion were created after Plaintiff's October 2022 dismissal, after her appeal, after her "final" dismissal and then only after she repeatedly requested Defendant to tell her why or provide her with the reasons she was dismissed.

(127) Plaintiff felt extremely disconcerted by Carney and Anderson shifting the focus from the test score error caused by the automated grading system and their refusal to look into or correct the grading error to focusing on a benign communication and/or email behavioral issue caused solely to Plaintiff's ASD and/or Aspergers.

(128) Carney, Anderson and Plaintiff's Veterinary of Physiology professor made Plaintiff feel ashamed, embarrassed and/or worried about her future as a student at LMU/CVM during the August 2022 meeting all because of issues/behaviors caused solely by Plaintiff's ASD and/or Aspergers.

(129) Plaintiff felt so unsupported during and after that August 2022 meeting that she perceived herself as now having a "target on her back."

(130) Plaintiff completely dropped the automated grading system error on her test and accepted the inaccurate D test score due to the manner in which she was being treated and made to feel by Carney and Anderson's statements and their shift from test score correction to focusing on Plaintiff's disability.

(131) Carney, Anderson and Plaintiff's Veterinary physiology professor all made it clear that they viewed behaviors and/or communication issues caused solely by Plaintiff's ASD and/or Aspergers as annoying, unacceptable and unprofessional.

(132) Plaintiff felt as if she was walking on eggshells and/or had a target for the remainder of her time as a student at LMU/CVM.

(133) Plaintiff either avoided or was extremely cautious about going to Carney, Anderson or any faculty of Defendants to complain or ask for help as she was afraid the focus would shift from her needs to her disability and/or Defendants labeling any new issue Plaintiff may have as another example of her "lacking professionalism."

(134) Defendants also did not care about bullying or concerns of bullying against Plaintiff in August 2022 that were brought to the Defendants' attention by another student who witnessed the same girl bullying both the Plaintiff and at least one (1) other student.

(135) Defendants ignored the bullying of Plaintiff and their attention again quickly shifted to Plaintiff, this time criticizing Plaintiff for activity on Facebook as "lacking professionalism".

(136) Defendants' actions toward Plaintiff and how they treated Plaintiff caused Plaintiff confusion, but Defendants later confirmed Plaintiff's concerns that she had a target on her back and they were out to get her because they did not view her as LMU/CVM doctorate degree material due to her ASD and/or Aspergers.

(137) Defendants were quick to criticize Plaintiff and label Plaintiff as "lacking professionalism" for issues/challenges caused solely by Plaintiff's ASD and/or Aspergers.

(138) Plaintiff knew she was being viewed differently and in a negative manner due solely to the fact that she had disabilities that perhaps made her different from other students

(139) Plaintiff at all times possessed the knowledge, work ethic and the skill set needed to graduate Defendants' Doctorate of Veterinary Medicine program and do an excellent job caring for and helping animals.

(140) Plaintiff followed Defendants' recommendations, instructions and/or any "Plan for Improvement" Defendants implemented from the date of the recommendations, instructions and implementation of any "Plan of Improvement" until the date of Plaintiff's dismissal.

**Plaintiff's Inability to Attend Kennel Class on October 15, 2022**

(141) Plaintiff's inability to attend her 6:45 a.m. Kennel class on October 15 arises out of and begins with her exposure to Covid and/or a respiratory infection on October 13 and/or 14, 2022.

(141) Defendants were aware that a student in Plaintiff's classes had tested positive for Covid.

(142) Defendants instructed the student that tested positive for Covid not to attend classes.

(143) Defendants did not notify that student's professors or do anything to ensure the student infected with Covid would not attend classes.

(144) Plaintiff sat next to a student infected with Covid on October 13 and/or 14, 2022.

(145) Plaintiff attended Anatomy lab on the evening of October 14, 2022.

(146) Plaintiff's Anatomy lab ended at 10:00 p.m.

(147) Plaintiff was feeling exhausted and "run-down" during and after Anatomy Lab.

(148) Plaintiff's drive home from Anatomy Lab was approximately 20 minutes.

(149) Plaintiff arrived home at approximately 10:20 p.m. on October 14 and was starting to feel the onset of Covid-like symptoms.

(150) Plaintiff had difficulty falling asleep and remaining asleep on the night of October 14 and early morning of October 15 due to the onset of Covid-like symptoms.

(151) Plaintiff apparently slept through her alarm on October 15 after having considerably difficulty falling asleep the night before.

(152) Plaintiff woke up at approximately 7:15 a.m. on the morning of October 15, 2022, feeling exhausted, groggy, weak and having difficulty getting out of bed.

(153) Plaintiff had Kennel class on the morning of October 15 that ran from 6:45 a.m. to 7:45 a.m.

(154) Plaintiff realized she was not going to be to make it to Kennell class, began the process of notifying the proper people about her situation and began trying to get the Kennel class covered by class mates.

(155) Defendants viewed Plaintiff's inability to attend a Kennell class on October 15 as an opportunity to dismiss Plaintiff.

(156) Defendants knew that many students had missed classes and some students had missed multiple Kennel classes in the past and were not punished or dismissed from school so Defendants could not use just use her inability to attend class on October 15, 2022, to justify dismissal/expulsion.

(157) Defendants needed to find something that arguably fit within the purview of and violated Defendants' so-called honor code which is actually referred to as "[d]esirable characteristics of veterinary students" in the Student Handbook. See (Ex. 1, P. 46-7).

(158) Defendants were annoyed with Plaintiff in both a professional and personal capacity, viewed plaintiff as not being LMU or CVM material and did not want Plaintiff entering the local community or professional world as a representative of LMU or CVM.

(159) Defendants were more concerned/focused on how students from LMU or CVM presented in the professional world (i.e., communication skills, professionalism or how students held and composed themselves) rather than the students' skill set and ability to excel in their chosen trade.

**Plaintiff on October 15 Followed the August 2022 "Plan for Improvement" or Recommendations Defendants Made to Govern Her Communications and Behaviors**

(160) On October`15, 2022, Plaintiff encountered a situation the nature which would pose serious potential challenges to any individual having ASD and/or Aspergers.

(161) Defendants never gave Plaintiff a chance to succeed.

(162) Defendants focused on finding a way to use an incident on October 15 and the events that followed to dismiss/expulse Plaintiff.

(163) On October 13 or 14, 2022, Plaintiff had just been exposed to Covid.

(164) Plaintiff starting feel bad physically due to her exposure, finished her last class, arrived home around 10:20 p.m. and was physically exhausted when she arrived home that evening.

(165) Plaintiff arrived home, ate something, looked over an assignment and attempted to get some rest as she had a Kennel class that started at 6:45 the next morning.

(166) Plaintiff's physical condition had begun to deteriorate, but she wanted to avoid missing the class.

(167) Plaintiff would have to email her professor and copy Director Carney if she was going to miss a class for being ill.

(168) Plaintiff was looking to avoid Director Carney as she knew that Defendants were looking for reasons to kick her out of LMU/CVM.

(169) Plaintiff did not want to provide Defendants with any more reasons to claim that Plaintiff lacked the "professionalism" and/or the maturity to be a Doctor of Veterinary Medicine.

(170) Plaintiff decided to try and get four (4) or (5) hours of sleep and hope she felt better the next morning so she could make it to class, but Plaintiff tossed and turned most of the night and felt physically worse as the night progressed.

(171) Plaintiff, upon waking up on October 15, 2022, and seeing the time, immediately sent an email at approximately 7:15 a.m. to her professor, Director Carney and her Kennel class tech advising all three that she woke up late, was very tired, exhausted, would not make it to Kennel class and/or was not sure what to do.

(172) Plaintiff did not receive a response to the 7:15 a.m. email she sent to her professor, her Kennel class tech and Director Carney.

(173) Plaintiff was wondering what to do about the 6:45 a.m. Kennel class and to whom she should report her situation when no one responded to her 7:15 a.m. email.

(174) Plaintiff texted a student group message asking if anyone could cover for her or swap Kennel classes with her.

(175) Plaintiff asked the students in the student group message what she should do when her professor. her Kennel class tech and Director Carney did not respond to the email she sent them at 7:15 a.m.

(176) Plaintiff neither attempted to conceal the fact she did not make it to her Kennel class or provide anyone with the impression that she made it to her 6:45 a.m. Kennel class on October 15 including her classmates, with whom she had a group text that morning, and her professor, the Kennel class tech and Director Carney whom she emailed at 7:15 a.m. on October 15, 2022.

(177) Pursuant to Carney and Anderson's instructions to Plaintiff in August 2022, Plaintiff did not send repetitive or frequent emails to her professor, the Kennel class tech or Director Carney, when she received no response to her 7:15 a.m. email.

(178) Plaintiff's condition/illness continued to worsen as the morning progressed.

(179) Plaintiff, after receiving no response from the professor, the Kennel class tech or Director Carney, texted her student group at approximately 9:45 a.m. advising she had not heard back from her

professor and asking other students what she should do about not making it to her 6:45 a.m. to 7:45 a.m. Kennel class that morning.

(180) Plaintiff was not trying to deceive anyone.

(181) Plaintiff was attempting to do the right thing and discuss her inability to attend the class with someone, in person and with authority, so she would not get into trouble and find out what she should do moving forward.

(182) In full compliance with the August 2022 "Plan of Action," Plaintiff did not send a barrage of emails or text messages to her professor, Director Carney or the Kennel class tech when no one responded to Plaintiff's 7:15 a.m. email.

(183) A student from the student group message advised Plaintiff that her professor did not check the email address. Plaintiff used, on Saturdays and that Plaintiff should go in-person to the Kennel and let someone there know what was going on.

(184) Plaintiff felt physically ill and/or exhausted, but had not been tested for Covid at 9:45 a.m. on Saturday, October 15, 2022.

(185) Plaintiff drove to the Kennel class building and sat in the parking lot for period of time to gather herself as she was feeling sick, bad and weak.

(186) Plaintiff exited her vehicle and left her cell phone in the car as cell phones were not permitted inside the Kennel.

(187) Plaintiff walked across the parking lot, entered the first doorway leading to the Kennell class area and saw no one in this area.

(188) Plaintiff, despite being ill with the onset of Covid and/or respiratory infection symptoms, did not send repetitive emails about her situation and made every effort possible to drive around and

find a professor or Kennel class tech to discuss, in person, her situation and find out what she needed to do.

(189) On October 15, 2022, Plaintiff's communication and behaviors complied with Defendants' recommendations, instructions and/or "Plan for Improvement" discussed during the August 2022 meeting with Carney and Anderson.

(190) On October 15, Plaintiff sent a single to email to her professor, copying Director Carney and the Kennell class tech on or about 7:15 a.m. to establish dialogue letting them know she was not feeling well, overslept and would not make it to her 6:45 a.m. to 7:45 a.m. Kennel class and then went to look for someone to speak with in person.

**<u>Plaintiff's Effort to Document Her Situation on the P.M. Attendance Sheet After She was Unable to Find Anyone or Reach Anyone by Email</u>**

(191) Plaintiff entered the room/area where the attendance sheet was located to try and find someone to speak to in person about her situation.

(192) Plaintiff was unable to locate anyone.

(193) Plaintiff remained in the room/area where the attendance sheet for Kennel class was kept, but at no time did Plaintiff enter the actual Kennel where the animals were located and where the Kennel class was conducted.

(194) Plaintiff looked on the table with attendance sheet.

(195) The a.m. attendance sheet for her a.m. Kennel class had been removed and a p.m. attendance sheet for the p.m. Kennel class had been set out.

(196) Plaintiff was unsure what time it was, unsure what to do and no one was around to speak to or ask what she should do now that the p.m. attendance sheets were out and the a.m. attendance sheets had been collected.

(197) Plaintiff was unable to ask students in the student group message what to do because her cell phone was in her car.

(198) Plaintiff decided to make a notation in the Notes section of the p.m. attendance sheet to explain or document her absence and situation.

(199) The p.m. attendance sheet had four (4) columns in the following order from left to right: Sign in; Sign out; Name; and Notes.

(200) Plaintiff's assigned Kennel class began at 6:45 a.m. and ended at 7:45 a.m.

(201) Plaintiff was unsure what to put and unsure what time it was, so she entered the ending time of her class 7:45, as a reference to her a.m. class, in the arrival time (Sign-in) column so it did not appear as if she arrived at 6:45, attended the 6:45 a.m. class or was signing out at 7:45 when her class actually ended in the Sign-out box.

(202) Plaintiff left the second column, Sign-out space, on the p.m. attendance sheet empty.

(203) Plaintiff wrote in her name in the third space/column.

(204) Plaintiff wrote a note in the Note space/column of the p.m. attendance sheet stating, to the best of her recollection, as follows:

> "I came in late after missing my Kennel shift a.m., emailed at 7:15 to inform I would not make it but came in late to let people know what was going on."

(205) Defendants are in possession of the p.m. attendance sheet.

(206) Plaintiff returned home and began feeling worse as the day progressed.

(207) Plaintiff made it clear to all that she did not attend her 6:45 to 7:45 a.m. Kennel class.

(208) Had Plaintiff wanted to be deceptive, Plaintiff would have entered 6:45 in the Sign-in space, 7:45 in the Sign-out space of the p.m. attendance sheet and would not have entered a note saying she missed the class.

(209) Plaintiff made it clear to her classmates in the student group text that she did not make it to her a.m. Kennel class on the morning of October 15, 2022.

(210) Plaintiff made it clear to her professor, Director Carney and to the Kennel class tech that she did not make it to her 6:45 a.m. Kennel class on the morning of October 15, 2022.

(211) Plaintiff's professor and/or her Kennel class tech that may have been present during the a.m. Kennel class and would have seen that Plaintiff was not present.

(212) Plaintiff at no time tried to deceive anyone and make it appear as if she did attend the 6:45 a.m. Kennel class on the morning of October 15, 2022.

(213) The next day, October 16, 2022, Plaintiff tested positive for a respiratory infection at a walk-in clinic, but her Covid exposure was too recent to test positive for Covid.

**Defendant's Dismissal of Plaintiff Constituted a Breach of Contract and a Breach of Contractual Due Process Rights Provided for in the Student Handbook**

(214) Defendants dismissed/expulsed Plaintiff on October 21, 2022.

(215) Plaintiff appealed her dismissal on October 26, 2022.

(216) Plaintiff's appeal was denied on or about October 28, 2022.

(217) Defendants' October 21 dismissal correspondence did not provided explanations as to what Plaintiff did or why she was being dismissed/expulsed on October 21, 2022.

(218) The October 21, 2022, dismissal correspondence from Dean Stacy Anderson stated as follows:

> The Student Progress Committee . . . met on October 21, 2022, and made a recommendation based on violation of the LMU-CVM Ethics and Honor Code. After review of their decision, the following determination has been made:
>
> > Effective October 21, 2022, you are dismissed from the LMU-CVM DVM program.

See (Ex. 3. Anderson Corres.)

(219) The October 21, 2022, correspondence does not identify what honor code provisions were violated, what behavior or conduct violated the alleged applicable honor code provisions and when the behavior or conduct forming the basis of Plaintiff's dismissal occurred.

(220) Defendants' failure to provide or identify to Plaintiff what honor code provisions she violated, the conduct or behavior violating those honor code provisions and when or what date the alleged conduct or behavior occurred resulting in Plaintiff's dismissal was breach of Defendants' contractual duties and the contractual due process rights provided Plaintiff in the Student Handbook.

(221) Plaintiff made numerous requests to Defendants for explanations as to why she was dismissed on October 21, 2022.

(222) Plaintiff appealed her October 21 dismissal within the time allotted Plaintiff for an appeal.

(223) Plaintiff appealed her October 21 dismissal without knowing the reasons for her dismissal and without understanding what she was appealing due to Defendants' failure to provide Plaintiff any with honor code provisions she was alleged to have violated and her conduct violating those provisions.

(224) Plaintiff's appeal was denied on October 28, 2022.

(225) Defendants provided Plaintiff with three (3) written explanations for her dismissal on November 1, 2022.

(226) The three (3) written reasons Director Carney sent to Plaintiff on November 1, 2022, was provided to Plaintiff after her October 21 dismissal and after her appeal of that dismissal was denied on October 28, 2022.

(227) The three (3) written reasons Defendants proffered on November 1 for Plaintiff's dismissal on October 21 stated as follows:

(1) Missed animal care shifts and subsequent falsification of medical records;

(2) Her lack of professionalism in both emails and text messages with faculty and students after repeated feedback from administration on how to properly conduct professional communication; and

(3) Absence of growth in level of professionalism after she had been warned by the administration and provided a specific plan for improvement.

See (Ex 2).

(228) The November 1, 2022, correspondence setting for the three (3) reasons for Plaintiff's dismissal informed Plaintiff, in writing, that her appeal rights had already been exhausted and that all decisions regarding her dismissal were final thereby precluding Plaintiff from any appeal to address or challenge the actual alleged three (3) reasons for her dismissal provided to Plaintiff for the first time on November 1, 2022.

**Plaintiff's Dismissal is Void Ab Initio**

(229) Defendants' failure to provide Plaintiff with the three (3) actual reasons for her dismissal prior to her appeal rights being exhausted violated her contractual rights and contractual due process rights set forth in her Student Handbook.

(230) Defendants' failure to provide the three (3) alleged reasons for Plaintiff's dismissal until after appeal rights had been exhausted rendered the appeal she did take as meaningless and futile.

(231) Plaintiff's appeal was rendered void ab initio and thereby vitiated Plaintiff's October 21, 2022, dismissal as the entire dismissal process was rendered void from the beginning.

(232) Plaintiff's October 21, 2022, dismissal is legally ineffective and void.

**Defendants' November 1, 2022, Proffered Reasons for Dismissal are Vague, Identify no Honor Code Provisions, No Dates of Alleged Conduct or What Plaintiff Did and When She Did It**

(233) Defendants November 1, 2022, correspondence from Director Carney setting forth three (3) reasons proffered from Plaintiff's dismissal are impermissibly vague and lack any requisite particularity.

(234) Defendants' proffered reasons for Plaintiff's termination (1) do not delineate any honor code provisions violated, (2) do not identify any specific acts or conduct violating the alleged honor code provisions, and (3) do not identify any time, place and/or date when the alleged conduct occurred.

(235) Defendant simply asserts conclusory allegations without any factual basis to support the allegations which are simply pretext for the real reason of Plaintiff's dismissal, discrimination.

**Proffered Reason (1)**

(236) Defendants' first proffered reason for Plaintiff's dismissal/expulsion was "[m]issed animal care shifts and subsequent falsification of medical records." See Id.

(237) On November 6, Director Carney advised Plaintiff that her dismissal "is not about missing the shift, it is about falsely signing in at 7:45 where not present at 7:45 in the kennel" after Plaintiff asked Carney whether she was dismissed due to missing a class as stated in the 3 proffered reasons for her dismissal provided to Plaintiff on November 1.

(238) Defendants confirmed on November 6 "that the missed animal care shift" portion of reason one (1) proffered on November 1was not about missing the 6:45 to 7:45 a.m. Kennel class.

(239) Plaintiff missed Kennel class due to illness that was documented by a medical care clinic and/or medical care professional.

(240) Defendants first reason relied solely upon the pretextual and fabricated allegation of "falsification of medical records" as a reason for Plaintiff's dismissal.

(241) The purported "medical records" at issue was the p.m. attendance sheet Plaintiff wrote "7:45" on and an explanation under the "Notes" column explaining what was going on with her and why she was not present at 6:45 for the a.m. Kennel class.

(242) Plaintiff not knowing what time it was and confused about what to do wrote on the P.M. attendance sheet the Ending Time of her A.M. Kennel class (7:45) in starting time space (sign-in space), wrote nothing in the ending time space (sign-out space) and wrote a note next to that stating:

> "I came in late after missing my Kennel shift a.m., emailed at 7:15 to inform I would not make it but came in late to let people know what was going on."

(243) The attendance sheet was not a medical record.

(244) Students do not enter medical information onto the attendance sheet.

(245) The attendance sheet does not contain medical information.

(246) Plaintiff's October 15 notation on the p.m. attendance sheet on was not medical information.

(247) Entry of medical information on the p.m. attendance sheet would be in violation of instructions provided to students about documenting the services and care they provide to the animals in the Kennel class.

(248) The attendance sheet is located outside the actual Kennel where the Kennel class takes place.

(249) Inside the Kennel, students feed, water and walk the dogs and clean their cages.

(250) Students during Kennel class do not actually provide medical care to the dogs/animals.

(251) There is a computer inside the Kennel where the animals are kept that has medical records software designed for entry of medical information and/or documentation of the services provided by students during the Kennel class.

(252) All information regarding the students' services for and care of the animals during the Kennel class are entered into the medical records software on the computer inside the Kennel.

(253) All medical records relating to the animals inside the Kennel are kept and stored electronically in the computer located inside the Kennel.

(254) Plaintiff, at no time, logged into Kennel class computer or entered any information into the medical record software maintained on the computer inside the Kennel class on October 15, 2022.

(255) At no time on October 15, 2022, did Plaintiff ever enter false information into the computer system containing the Kennel medical records.

(256) Plaintiff never entered false information into any medical record while a student at Defendants.

(257) Defendants November 1 proffered reasons for Plaintiff's dismissal reference "records" in the plural form, but do not identify with any specificity what medical records, in the plural form, Plaintiff falsified and how she falsified such medical records.

(258) Plaintiff has never falsified any medical records anywhere.

(259) Defendants were reckless and/or intentional in their false allegations against Plaintiff regarding "falsification of medical records" and such reckless or intentional conduct by Defendants irreparably damages Plaintiff's reputation, her professional and collegiate record.

(260) Defendants were reckless and/or intentional in their false allegations against Plaintiff and such reckless or intentional conduct by Defendants irreparably damages Plaintiff's ability to gain employment or ever be a Doctor Veterinary of Medicine in pursuit of her childhood dream.

(261) The falsification of medical records allegation does not indicate a date of the event, but prior to October 15, 2022, Defendants never confronted Plaintiff about or accused Plaintiff of ever falsifying medical records.

(262) The p.m. attendance sheet was simply a document to record class attendance and not a medical record.

(263) Plaintiff's October 15 entries onto the attendance sheet in no way represented that Plaintiff attended her assigned class from 6:45 until 7:45.

(264) Plaintiff at no time tried convince her professor or anyone that she attended the 6:45 a.m. Kennel in which case she would have documented a 6:45 a.m. arrival time and sign out time of 7:45 a.m. with no explanatory note.

(265) The area with the Kennel class attendance sheet is located had a surveillance camera and Plaintiff was aware of this surveillance camera.

(266) Plaintiff went to the Kennel class area around 10:00 a.m. to find someone and explain to them what happened, not to try and cheat the system.

(267) Plaintiff's documentation in the attendance sheet was, at best, confusing, but Defendants used this communication issue as a pretext to get rid of Plaintiff because Defendants viewed her as annoying and unprofessional due solely to her communication/behavior issues caused solely by her ASD and/or Aspergers.

(268) Any communication issues or ambiguities on the October 15, 2022, attendance sheet was caused solely by Plaintiff's ASD and/or Aspergers and students making a similar ambiguous entry on the attendance under the same circumstances and with whom Defendants were not looking for a reason to dismiss would not have been dismissed by Defendants and Defendants would have simply sought clarification of the communication/entry on the attendance sheet.

**Defendant's Remaining 2 Reasons for Dismissal/Expulsion Related to and Arose From the Same Communication/Behavior Issues Carney and Anderson had Already Determined to Be Caused Solely by Plaintiff's ASD and/or Aspergers**

(269) Defendants' second and third written proffered reasons for Plaintiff's termination related to the communication/behavior issues that Carney and Anderson had already concluded were related to and caused solely by Plaintiff's ASD and/or Aspergers.

(270) Defendants were intentionally vague as to what behavior, communication or situation served as the basis for the second and third reasons for Plaintiff's dismissal because the behaviors and communication issues all related to Plaintiff's ASD and/or Aspergers.

(271) Defendants can not use communication and/or behaviors caused solely by Plaintiff's ASD and/or Aspergers as reasons for her dismissal without violating the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(272) Defendants were also intentionally vague about the alleged "Plan for Improvement" as the only "Plan for Improvement" was implemented in August 2022 by Carney and Anderson after they both agreed that the communication/behavior issues resulting in the "Plan for Improvement" were caused solely by Plaintiff's ASD and/or Aspergers.

(273) The communication/behavior issues in August 2022 related to Plaintiff's frequent emails, repetitive emails and/or email behaviors Defendants believed to be unprofessional, but all of which were caused solely by Plaintiff's ASD and/or Aspergers.

(274) To address the frequent emails, repetitive emails and/or email behaviors in August 2022, Carney and Anderson's recommendations and/or "Plan for Improvement" were for Plaintiff to reduce the number of emails and attempt, whenever possible, to meet with her professors in person to discuss issues or concerns.

(275) Plaintiff complied with Carney and Anderson's recommendations and/or "Plan for Improvement" from August 2022 through October 21 and Plaintiff was never counseled or confronted about email or text behavior/communication issues again after the August 2022 meeting.

(276) Plaintiff also complied with Carney and Anderson's recommendations and "Plan for Improvement" on October 15 by limiting her email frequency to one (1) email to her professor and then attempting to find someone in the Kennel class area to discuss her situation with in person.

(277) Defendants' November 1 proffered reasons for Plaintiff's dismissal do not explain what date the "Plan for Improvement" was implemented, why it was implemented, whether it was written or conveyed orally, what the plan requested of Plaintiff, what conduct Plaintiff engaged in to violate the plan and when the conduct violating the Plan occurred.

(278) During the August 2022 meeting, Carney and Anderson and determined that Plaintiff's communication and behavior issues and/or the frequent and repetitive email behavior/communication issues were all related to and caused solely by Plaintiff's ASD and/or Aspergers.

(279) Defendants could not punish or take adverse action against Plaintiff in August 2022 without violating the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act based on her communication/behavior issues, frequent emails and/or repetitive emails occurring in August 2022 as all were caused solely by Plainitff's ASD and/or Aspergers.

(280) Defendants improperly used the email and text communication/behavior issues addressed in August 2022 to serve as two (2) of the three (3) reasons for Plaintiff's dismissal/expulsion after the email and text communication/behavior issues addressed in August 2022 were already determined to be related to and caused solely by Plaintiff's ASD and/or Aspergers.

(281) Defendants could not use that same ASD and/or Aspergers caused communication and/or behavior issues occurring and addressed in August 2022 to serve as a reason (2 out of 3 reasons) for her dismissal/expulsion on October 21, 2022.

(282) Defendant cannot use disability caused behavior or disability caused communication issues that would have been a violation of the ADA, Title III of the ADA and Section 504 of the

Rehabilitation Act to simply punish Plaintiff for in August 2022 to later serve as 2 of the 3 reasons to dismiss Plaintiff two 2 months later.

(283) Defendants were annoyed with Plaintiff and viewed Plaintiff as not being LMU/CVM material solely based on her ASD and/or Aspergers.

(284) Defendants viewed Plaintiff as "unprofessional" and "lacking professionalism" based solely on behaviors, communication challenges, mannerisms and idiosyncrasies caused solely by Plaintiff's ASD and/or Aspergers.

(285) Defendants' dismissal/expulsion of Plaintiff violated her contractual rights including, but not limited to those, set forth in her Student Handbook, the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

**Defendants Admitted that the Remaining 2 Reasons For Plaintiff's Dismissal/Expulsion Violated at ADA**

(286) Defendants attempted to have last two (2) written proffered pretextual reasons for Plaintiff's dismissal/expulsion, offered on November 1, track the "[d]esirable characteristics of veterinary students" set forth in the Student Handbook. Id. at 46-7.

(287) Defendants attempted to make the August 2022 communication issues fall within the purview of one or more of the 15 "[d]esirable characteristics of veterinary students" by classifying the August 22 email issue or communication issue as unprofessional conduct for purposes of supporting the October 17, 2022 dismissal/expulsion. See (Id., P. 46) ("A veterinary student must behave in a professional manner . . ..").

(288) Defendants last two (2) pretextual reasons for Plaintiff's dismissal/expulsion were both related to the frequent email communication issues, behavior and/or professionalism concerns addressed during the August 2022 meeting between Plaintiff, her Veterinary Physiology professor, Dean Anderson and Director Carney.

(289) Plaintiff had not been subjected to any other disciplinary actions between the August 2022 meeting with Plaintiff's Veterinary Physiology professor, Director Anderson and Dean Carney and the October 21, 2022, dismissal/expulsion so there was nothing else upon which to base the dismissal except for the issues address during the August 2022 meeting between Plaintiff, her Veterinary Physiology professor, Dean Anderson and Director Carney.

(290) Dean Anderson and Director Carney agreed that the communication, behavior and/or professionalism issues in August 2022 were caused solely by Plaintiff's ASD and/or Aspergers.

(291) Defendants' use of the August 2022 communication, behavior and/or professionalism issues that Anderson and Carney determined, in August 2022, were caused solely by Plaintiff's ASD and/or Aspergers as a reason to dismiss Plaintiff on October 21, 2022 violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(292) Defendants attempted to bolster their written reasons for Plaintiff's dismissal by including events that occurred back in August, but apparently failed to realize that the events back in August were disability related and could not form the basis of dismissal without violating the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

**Plaintiff's Communication/Behavior Issues Were Benign and Caused No Harm**

(293) All behavior issues/problems Plaintiff had while a student at Defendants were caused solely by her ASD and/or Aspergers.

(294) Plaintiff was a polite and courteous individual that cared very much about people and animals.

(295) Plaintiff never acted in a threatening manner or threatened anyone while she was a student at Defendants.

(296) Plaintiff never threatened physical and bodily harm to anyone while she was a student at Defendants.

(297) Plaintiff never physically or mental harmed anyone while she was a student at Defendants.

**Defendants' Accusation of Untruthfulness Related to Plaintiff's Alleged Defensiveness**

(298) Defendants allude to Plaintiff being defensive and attribute Plaintiff's defensiveness as Plaintiff being untruthful in Defendants' discussion about dismissing/expulsing Plaintiff, but Defendants neither demonstrate nor identify how Plaintiff was untruthful, when she was untruthful, what she said that was untruthful or discuss any facts to support Defendants' conclusory assertion of untruthfulness.

(299) Plaintiff was defensive at times, especially after her August 2022 encounter with Director Carney and Dean Anderson where and when it became apparent to Plaintiff: (1) that she had a target on her back, (2) that Carney and/or Anderson possessed a level of contempt for her; (3) that Carney and/or Anderson would not assist her in matters such as investigating the automated grading system error or her being bullied by a classmate that was also bullying other students; (4) Carney and Anderson switched focus to Plaintiff's actions or conduct to avoid addressing the professor's reneging on her promise to correct Plaintiff's test score due to the automated grading system error and to avoid addressing Plaintiff being bullied; and (5) that she would likely get blamed for something to force her out of school thereby ruining her childhood dream of becoming a doctor of veterinary medicine.

(300) Plaintiff's ASD and/or Aspergers can also cause defensiveness due to the manner in which Plaintiff processes information and communicates in a stressful situation.

(301) Defendants were annoyed by Plaintiff's behavior/communication issues all of which were caused solely by Plainitff's ASD and/or Aspergers and viewed Plaintiff as lacking the

professionalism Defendants wanted of its Doctorate of Veterinary Medicine program students, but the entire reason for viewing Plaintiff in this manner or as lacking professionalism was due to behaviors, communication challenges, mannerisms and idiosyncrasies caused solely by Plaintiff's ASD and/or Aspergers.

(302) Plaintiff possessed intrinsic qualities that would have made her a top notch, loving, caring and competent Doctor of Veterinary Medicine all of which were overlooked by Defendants and Defendants refused to give Plaintiff a chance.

## CAUSES OF ACTION

### Claim I

### Violation of ADA, Title III

(303) Plaintiff adopts, reiterates and incorporates by reference all information contained in each of the separately numbered allegations contained in ¶¶ (1) through (302).

(304) Defendants' student handbook expressly adopted into and/or agreed to afford Plaintiff protection and relief under "the Americans with Disabilities Act of 1990 (PL101-336), as amended" and codified at 28 C.F.R. § 36. See (Ex, 1, Appendix E on p. 117). Exhibit # 1, pursuant to Tenn.R.Civ.P. 10.03, the August 2022 Student Handbook, is comprised of 156 pages and the entire document is in possession of both Defendants and may also be accessed on Defendants' website.

(305) Defendants' student handbook states "[a]ll personnel and educational activities conducted by Lincoln Memorial University are subject to the equal opportunity, affirmative action, and nondiscrimination provisions of . . . the Americans with Disabilities Act of 1990 (PL101-336), as amended. . .." Id.

(306) Defendant's Student Handbook creates an obligation upon Defendants and Defendant's faculty to not discriminate on the basis of any disabilities recognized by the ADA, ADA Title III and/or Section 504 of the Rehabilitation Act.

(307) The Student Handbook expressly provides as follows:

> All members of the University community bear responsibility for compliance with the equal opportunity, affirmative action, and nondiscrimination policies disseminated through the current University publications, including, but not limited to the LMU Student Handbook (ONLINE) . . ..

Id. at P. 117, ¶ 3.

(308) Defendants are a private University that received public funds and/or federal financial assistance.

(309) Defendants breached its contractual duty to adhere to and comply with the protections afforded by the ADA and/or Title III of the ADA.

(310) Plaintiff has a disability, ASD and/or Aspergers, that is covered by and afforded protection under the ADA.

(311) Plaintiff's covered disability was communicated to Defendants.

(312) Defendants had knowledge of Plaintiff's ASD and/or Aspergers.

(313) Defendants knew that Plaintiff's ASD and/or Aspergers were disabilities covered by and afforded protection under the ADA.

(314) Defendants received appropriate and proper notice of Plaintiff's disability and accommodations Plaintiff requested or accommodations she may need for her ADA covered disabilities.

(315) Defendants failed to provide Plaintiff with reasonable accommodations.

(316) Defendants refused to allow Plaintiff to participate and/or continue to participate as a student at Defendants based solely Plaintiff's ASD and/or Aspergers.

(317) Defendants refused to allow Plaintiff to participate and/or continue to participate as a student based on solely behaviors and communication issues caused solely by Plaintiff's ASD and/or Aspergers.

(318) Defendants dismissed/expulsed Plaintiff based on solely on behaviors and communication issues caused solely by Plaintiff's ASD and/or Aspergers.

(319) Defendants had a discriminatory intent.

(320) Defendants' October 21, 2022, dismissal letter delineates no reasons for Plaintiff's dismissal.

(321) On November 1, 2022, Defendant proffered three (3) written reasons for Plaintiff's dismissal the first of which was false/fabricated and pre-textual and the remaining two (2) reasons were based solely on behaviors and communication issues caused solely by Plainitt's ASD and/or Aspergers.

(322) Defendants' November 1 correspondence provided Plaintiff with, for the first time, reasons and/or explanation for her dismissal, but the November 1 correspondence was provided after Plaintiff's official dismissal, after Plaintiff's appeal and after Defendants denied Plaintiff's appeal.

(323) Defendants effectively precluded Plaintiff from understanding and/or knowing the reasons for her dismissal until after all appeal rights had been exhausted.

(324) Defendants attempted to conceal the reasons and/or not disclose the reasons for Plaintiff's dismissal because Plaintiff was dismissed due solely to her ASD and/or Aspergers and the few minor behaviors/communication issues caused solely by her ASD and/or Aspergers.

(325) Defendants attempted to create and proffer some pretextual reasons and/or fabricate reasons for Plaintiff's dismissal on about November 1, but those proffered reasons were very vague,

point to or identify no specific conduct or events and were all issues or concerns related solely to Plaintiff's ASD and/or Aspergers.

(326) Defendants were familiar with challenges students could face that had ASD and/or Aspergers.

(327) Defendants acted with intent because they knew they could not discriminate against, take adverse actions against or dismiss/expulse students based on behaviors caused by ASD and/or Aspergers without violating the ADA.

(328) Defendants acted with intent because they knew they could not discriminate against, take adverse actions against or dismiss/expulse students based on communication issues caused by ASD and/or Aspergers without violating the ADA.

(329) Defendants dismissed/expulsed Plaintiff for sending emails too frequently which was an issue caused solely by her ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(330) Defendants dismissed/expulsed Plaintiff for a lack of professionalism due to communication issues caused solely by her ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(331) Defendants dismissed/expulsed Plaintiff for a lack of professionalism due to behavior issues caused solely by her ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(332) Defendants had knowledge of and understood the symptoms, challenges and behaviors Plaintiff's ASD and/or Aspergers could manifest on occasion.

(333) Defendants acted with intent because they had knowledge of and understood the symptoms, challenges and behaviors Plaintiff's ASD and/or Aspergers could manifest on occasion.

(334) Defendants had a duty to accommodate Plaintiff's disabilities covered by and/or afforded protection by the ADA.

(335) Defendants failed to accommodate Plaintiff's disabilities covered by and/or afforded protection by the ADA.

(336) Plaintiff's behaviors and/or communication issues in August 2022 manifesting as "frequent email communication" with her professor(s) or text issues with students were caused solely by her ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(337) Plaintiff's frequent/repetitive emails to her Veterinary Physiology professor when the professor failed to correct Plaintiff's grade as promised was caused solely by her ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(338) At no time did Plaintiff ever treat anyone aggressively or in an intimidating manner.

(339) At no time did Plaintiff ever harm anyone or cause anyone injury.

(340) At no time did Plaintiff ever raise her voice in an inappropriate manner to Defendants' faculty or other students.

(341) Plaintiff's perceived lack of professionalism or alleged unprofessional behavior was simply another way of labeling the communication and/or behaviors caused solely by Plaintiff's ASD and/or Aspergers.

(342) During the August 2022 meeting, Director Carney, Dean Anderson and Plaintiff discussed all existing issues and/or concerns regarding Plaintiff, her communication/behavior issues and her perceived lack of professionalism and agreed that all were caused solely by Plaintiff's ASD and/or Aspergers.

(343) During the August 2022 meeting, Dean Anderson and Director Carney asked Plaintiff to be mindful about sending professors too many emails and that she should attempt to meet professors in person, where possible, to discuss matters or concerns in effort to reduce the frequency of emails.

(344) From the August 2022 meeting through the October 21 dismissal, Plaintiff was mindful of her email frequency and email volume to her professors and Plaintiff meet with her professors in person, when possible, to discuss any issues or concerns.

(345) Defendants did not have to request another meeting with Plaintiff to discuss Plaintiff's email frequency, communication issues, behavior issues or lack of professionalism between the August 2022 meeting and Plaintiff's October 21, 2022, dismissal.

(346) On November 1, 2022, Defendants proffered three (3) reasons for Plaintiff's October 21 dismissal/expulsion, but these reasons were false, pretextual and/or impermissibly based on communication/behavior issues caused solely by Plaintiff's ASD and/or Aspergers as addressed and determined by Director Carney and Dean Anderson during their August 2022 meeting with Plaintiff.

(347) There were no new behavior, communication, professionalism or email/text message issues between the August 2022 meeting and Plaintiff's October 21 dismissal that Defendants could have specifically cited to or relied upon for Plaintiff's dismissal, so Defendants either proffered no reasons (December 21 dismissal letter) or intentionally vague reasons for her dismissal (November 1 correspondence).

(348) Defendants were annoyed by Plaintiff and felt that Plaintiff lacked the degree of professionalism necessary to be an LMU/CVM doctorate candidate based solely on the communication and behavior issues caused solely by Plainitff's ASD and/or Aspergers.

(349) Defendants fabricated pretextual reasons for dismissing/expulsing Plaintiff including an allegation of "falsification of medical records."

(350) Falsification of medical records is an extremely strong and aggressive accusation that was both unwarranted and irreparably harmed plaintiff's personal reputation, professional reputation, collegiate record and ruined her chances to work as a medical professional and/or a Doctor of Veterinary Medicine which was her childhood dream.

(351) Plaintiff at no time attempted to cheat the system or make anyone believe she attended the 6:45 a.m. to 7:45 a.m. Kennel class on October 15, 2022.

(352) Plaintiff's numerous written communications with students in the group text, Plaintiff's written notation on the October 15 p.m. attendance sheet and her email to her professor, Director Carney and the Kennel class tech at 7:15 a.m. all together clearly reflect that Plaintiff was not trying to lead anyone to believe she attended her 6:45 to 7:45 a.m. Kennel class on October 15, 2022.

(353) Defendants made no effort to understand the situation on October 15 as Defendants sought only to accomplish their agenda of getting rid of a student. Plaintiff, with disabilities that didn't quiet meet their ideal, professional, well put together doctorate student, but Defendants overlooked the intrinsic qualities that would have made Plaintiff an outstanding Doctor of Veterinary Medicine.

(354) Plaintiff's ASD and/or Aspergers caused communication and/or behavior issues (on infrequent and rare occasions) that were, at best annoying, but caused no harm to anyone, caused no harm to any animals, threatened no harm to anyone or any animals and did not compromise the care and love she provided to and would continue to provide to animals.

(355) Plaintiff possesses all the key and important characteristics a veterinary student actually needs to provide loving care to animals.

(356) Plaintiff would make a wonderful Doctor of Veterinary Medicine despite any infrequent awkward behaviors or communication issues that may arise, from time to time, caused solely by her ASD and/or Aspergers.

(357) Appendix E of Defendants' Student Handbook mandates that all personnel and student activities are subject to nondiscrimination provisions of various Federal antidiscrimination laws including, but not limited to, the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973, as Amended by U.S.C. Title 41, Chapter 60. See (HB, Page 115).

(358) Defendants violated Plaintiff's rights under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act by discriminating against Plaintiff based solely on her ASD and/or Aspergers.

(359) Defendants violated Plaintiff's rights under the ADA. Title III of the ADA and Section 504 of the Rehabilitation Act by discriminating against Plaintiff based solely on behaviors caused solely by her ASD and/or Aspergers.

(360) Defendants violated Plaintiff's rights under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act by discriminating against Plaintiff based solely on communication issues caused solely by her ASD and/or Aspergers.

(361) Defendants violated Plaintiff's rights under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act by discriminating against Plaintiff based solely on Defendants' perceived lack of professionalism issues caused solely by her ASD and/or Aspergers.

(362) On November 1, 2022, Defendants falsely and irresponsibly accused Plaintiff of falsification of medical records which was pretext for the real reason of dismissal/expulsion, discrimination based solely on her ASD and/or Aspergers.

(363) On November 1, 2022, Defendants dismissed/expulsed Plaintiff based on three (3) written proffered reasons, all three (3) of which were related to communication and behavior issues caused solely by Plaintiff's ASD and/or Aspergers.

(364) Defendants falsely accused Plaintiff of "falsification of medical records" to try and create a pretextual reason for dismissal/expulsion that fit the "[d]esirebale characteristics of veterinary students" and behavior requirements set forth on Pages 45-47 of the Student Handbook.

(365) Plaintiff never entered any information into the medical record software on the computer inside the Kennel on October 15, 2022.

(366) Plaintiff did not falsify any medical records on October 15, 2022, or at any time while she was a student at Defendants.

(367) Defendants violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation by using communication/behavior issues taking place in August of 2022 as a basis for Plaintiff's dismissal/expulsion that were previously determined by Defendants to be caused solely by Plaintiff's ASD and/or Aspergers.

(368) Defendants dismissed/expulsed Plaintiff based solely on behaviors and/or communication issues caused by her ASD and/or Aspergers in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

**Defendants' Duties Under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act**

(369) Disability related conduct was involved in the August 2022 communication/behavioral issues.

(370) In August 2022, Defendants had a duty to figure out why Plaintiff's conduct was occurring and to engage in an interactive process with Plaintiff to determine whether any reasonable accommodations/modifications were possible.

(371) Defendant engaged in this process and properly discharged its duty in August 2022.

(372) Plaintiff's disability related conduct or miscommunication was involved on October 15, 2022.

(373) Defendants had a duty on or about October 15, 2022, to figure out why Plaintiff's conduct occurred, if Defendants were truly concerned about that conduct, and to engage in the requisite interactive process with Plaintiff to determine whether any reasonable accommodations/modifications were either necessary or possible.

(374) Defendants failed to make any meaningful efforts to engage in the requisite interactive process between October 15 and Plaintiff's dismissal on October 21, 2022.

(375) Defendants' failure to engage in this requisite interactive process to determine whether the conduct or incident at issues was disability related constituted a violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(376) Defendants refused to engage the requisite interactive process to address the October 15, 2022, incident because Defendants were seeking to use the October 15 incident dismiss Plaintiff and not seeking to understand the incident.

(377) Title III of the ADA has an effective date of January 26, 1992, and the ADAAA of 2008 governs inclusion of ASD and Aspergers as covered disabilities under the ADA and Section 504 of the Rehabilitation Act and, therefore, Plaintiff's claim is subject to the 4-year statute of limitations set forth in 28 U.S.C 1658(a) governing all federal claims created after December 1, 1990.

(378) Defendants are vicariously liable for the actions and/or omissions of its agents, employees and/or independent contractors including, but not limited to, Dean Stacey Anderson and Director Kimberly Carney.

(379) Defendants' actions and/or omissions and the actions and/or omissions of its agents, employees and/or intendent contractors are the proximate cause and cause in fact of Plaintiffs' injuries for which Defendants are responsible.

(380) Defendants' liability is joint and several.

(381) Plaintiff is entitled to compensatory damages, punitive damages, exemplary damages, injunctive relief including reinstatement of Plaintiff in the school of Veterinary Medicine as a first-year student in the Doctorate of Veterinary Medicine program, attorney's fees and costs.

## Claim II

## Breach of Contract and Bad Faith Breach of Contract

(382) Plaintiff adopts, reiterates and incorporates by reference all information contained in each of the separately numbered ¶¶ (1) through (381).

### Student Handbook Creates Enforceable Express and/or Implied Contract

(383) The relation between Plaintiff and Defendants is contractual in nature, express and/or implied. Per Tenn.R.Civ.P. 10.03, Defendants are in possession of an entire copy of Defendants' 156-page August 2022 Student Handbook and entire copy is accessible online on Defendants' Website.

(384) While Defendants may try to renounce its Student Handbook as creating a contractual relationship with Plaintiff, the provisions of Defendants' Student Handbook are enforceable as an express and/or implied contract. Pursuant to Tenn.R.Civ.P. 10.03, Exhibit # 1 is the August 2022 Student Handbook (comprised of 156 pages) and the entire document is in possession of both Defendants and may also be accessed on Defendants' website.

(385) Defendants' student handbook defines the express and/or implied contractual relationship between Plaintiff and Defendants.

(386) Disciplinary actions and proceedings is the appropriate subject matter of an enforceable contract issue.

(387) Defendants' Student Handbook is a valid and enforceable contract of adhesion with an imbalance of bargaining power between Plaintiff and Defendant and Defendant cannot elect and chose

to enforce only those provisions that Defendants deem beneficial to Defendants, but ignore those benefiting Plaintiff.

(388) Defendants' Student Handbook is a contract of adhesion and any disclaimers to enforceability set forth in the Student Handbook is unenforceable as unconscionable if the disclaimer purports to allow Defendants to enforce terms of the Handbook against Plaintiff, but does not permit Plaintiff the ability to enforce provisions, such as matters related to discipline and dismissal, that Plaintiff seeks to enforce in return.

**Defendant's Breach Contractual Obligations Owed to Plaintiff**

(389) Plaintiff entered into a contract with Defendants whereby Plaintiff pays tuition and Defendants provide Plaintiff with an education free from discrimination that violates the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(390) Plaintiff paid her tuition and accepted the terms of the Student Handbook through enrollment.

(391) Defendants breached on its obligations by failing to provide Plaintiff with the education she was promised and paid for and by failing to provide her an education in an educational setting free from discrimination as promised, represented and warranted.

(392) Defendants also breach its contractual duties and obligations to Plaintiff during the disciplinary process, dismissal process and appeal process and violated Plaintiff's due process rights.

(393) Plaintiff had other opportunities to attend other schools of Veterinary Medicine, but chose defendant upon the belief, representation and contractual obligation that Defendant would not discriminate against Plaintiff in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act and that the campus was a discrimination free campus as stated in the Student Handbook:

> All members of the University community bear responsibility for compliance with the equal opportunity, affirmative action and nondiscrimination policies . . ..

See (Ex. 1, App. E, P.117, ¶ 3). Pursuant to Tenn.R.Civ.P. 10.03, Exhibit # 1 is the August 2022 Student Handbook (comprised of 156 pages) and the entire document is in possession of both Defendants and may also be accessed on Defendants' website.

(394) Defendants promised and warranted Plaintiff she would receive an education in an environment free from discrimination that would not violate the ADA, Title III and Section 504 of the Rehabilitation Act.

(395) Defendants breached its promise to Plaintiff and discriminated against her on the basis of her disabilities in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(396) Defendants utilize a Student Handbook that creates obligations and rights for the students.

(397) Defendants' Student Handbook creates rights and obligations for Defendants.

(398) The provisions in Defendants' Student Handbook create contractual and/or implied contractual rights, duties and obligations.

(399) Defendants' Student Handbook in Appendix E on Page 117 is entitled "Appendix E: Equal Opportunity Statement." See (Ex. 1).

(400) Appendix E creates a duty upon Defendants to provide a campus free of discrimination for those categories of discrimination enumerated in Appendix E.

(401) Appendix E of the Student Handbook creates an obligation upon Defendants to not discriminate on the basis of any disabilities recognized by the ADA, Title III of the ADA, and Section 504 of the Rehabilitation Act as set forth in the following:

> All personal and educational activities conducted by Lincoln Memorial University are subject to the equal opportunity, affirmative action, and nondiscrimination provisions of the . . . Section 504 of the Rehabilitation Act of 1973, as amended by U.S.C. Title 41 . . . the Americans with Disabilities Act of 1990 (PL101-336), as amended . . ..

See Id. at P. 117, ¶ 2.

(402) The Student Handbook expressly provides as follows:

> All members of the University community bear responsibility for compliance with the equal opportunity, affirmative action, and nondiscrimination policies disseminated through the current University publications, including, but not limited to the LMU Student Handbook (ONLINE) . . ..

See Id. at P. 117, ¶ 2.

(403) Defendants had a contractual and/or implied contractual duty to follow and/or comply with the ADA and not violate the ADA as it related to Plaintiff's ADA covered disabilities.

(404) Defendants had a contractual and/or implied contractual duty to follow and/or comply with Title III of the ADA and not violate Title III of the ADA as it related to Plaintiff's ADA covered disabilities.

(405) Defendants had a contractual and/or implied contractual duty to follow and/or comply with Section 504 of the Rehabilitation Act and not violate Section 504 of the Rehabilitation Act as it related to Plaintiff's ADA and/or Rehabilitation Act covered disabilities.

(406) Defendants violated the ADA as it related to the Plaintiff's ADA covered disabilities.

(407) Defendants violated Title III of the ADA as it related to Plaintiff's Title III of the ADA covered disabilities.

(408) Defendants violated Section 504 of the Rehabilitation Act as it related to the Plaintiff's ADA and/or Rehabilitation Act covered Disabilities.

(409) Defendants dismissed/expulsed Plaintiff from LMU and/or CVM ("Defendants") based solely upon behaviors and/or communication issues caused solely by Plaintiff's ASD and/or Aspergers in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(410) Defendants' proffered reasons for Plaintiff's dismissal/expulsion from LMU and/or CVM were pretext for discrimination and/or fabricated.

(411) Defendants' real reason for Plaintiff's dismissal/expulsion was discrimination in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(412) Plaintiff never fabricated, falsified or made fraudulent entries into any medical records before, on or after October 15, 2022.

(413) Plaintiff has never fabricated, falsified or made fraudulent entries into any medical records anywhere at anytime

(414) Defendants' false accusation accusing Plaintiff of "falsification of medical records" is willful, wanton, intentional, reckless and reprehensible.

(415) Defendants knew, when they falsely accused Plaintiff of "falsification of medical records," that such an allegation would have a devastating impact on Plaintiff's future, ruin her collegiate record, prevent her from becoming a Doctor of Veterinary Medicine and cause irreparable harm to her personal and professional reputation, but Defendants asserted the false allegation anyway to serve as a needed basis for her improper dismissal/expulsion and as a pretext for the true reason of her dismissal/expulsion; discrimination predicated upon Defendants' annoyance with Plaintiff's communication and/or behavioral issues caused solely by her ASD and/or Aspergers.

(416) Defendants' false accusation accusing Plaintiff of falsifying medical records was made with reckless and/or intentional disregard for the truth, Plaintiff's future and how the false allegation would impact both her future and her reputation.

(417) Defendants' dismissal/expulsion violated the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

(418) Defendants' dismissal/expulsion of Plaintiff violated the Defendant's contractual obligations to Plaintiff set forth in its own Student Handbook.

(419) Defendants' pretextual efforts to blame the dismissal/expulsion on Plaintiff's alleged falsification of medical records constituted bad faith breach of contract and bad faith breach of the duties incumbent upon the Defendants as the proffered written basis was false, Defendants knew it was false and Defendant's knew the false allegations would cause irreparable harm to Plaintiff's reputation, collegiate record, career and future income.

(420) Defendants acted intentionally and/or reckless.

(421) Defendants knowingly and intentionally dismissed Plaintiff in violation of protections afforded her under the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act and knowingly, intentionally and in bad faith breached its contractual obligations owed Plaintiff.

(422) Defendants knowingly, intentionally, recklessly and wantonly fabricated false allegations against Plaintiff, solely for purposes of creating a pretextual reason for her dismissal, that were of such a nature that Defendants knew such allegations would irreparably harm plaintiff's personal reputation, professional reputation and ruin any chance Plaintiff may have had to realize her childhood dream of becoming a Doctor of Veterinary Medicine.

(423) Defendants' intentional act fabricating a false and pretextual reason for Plaintiff's dismissal that was of such a nature that the fabricated reason would knowingly and/or intentionally cause irreparable harm to Plaintiff, her reputation and any chances for a professional career in medicine constituted breach of contract and bad faith breach of contract.

(424) Defendants knew the three (3) written proffered reasons for Plaintiff's dismissal in the November 1, 2022, correspondence to Plaintiff were fabricated, false, misleading and were a pretext for the true reason of Plaintiff's dismissal/expulsion: Discrimination in violation of the ADA, Title III of the ADA and Section 504 of the Rehabilitation Act.

**Breach of Duty to Provide Basis of Dismissal and Plaintiff's Dismissal is Void Ab Initio**

(425) Plaintiff's contractual rights and/or rights conferred by Defendant's Student Handbook were violated and breached by Defendants' failure to provide Plaintiff with any reasons for her dismissal on October 21.

(426) Defendants dismissed Plaintiff on October 21.

(427) Defendants offered no reasons for the dismissal in the October 21 dismissal correspondence.

(428) Plaintiff tried, but was unable to get specific reasons for her dismissal prior to her appeal constituting breach of contract.

(429) Plaintiff appealed on October 26 without knowing the specific reasons for her dismissal.

(430) Plaintiff's appeal was denied on October 28, 2022.

(431) Plaintiff continued to request the reasons for her dismissal and Defendants sent Plaintiff a correspondence on November 1 proffering three (3) written reasons for her dismissal, but also reminding her that her appeal was resolved, over and all decisions were final.

(432) Plaintiff was effectively denied an opportunity to appeal or challenge the actual proffered reasons for her termination as they were kept from her until after her appeal was denied thereby rending Plaintiff's appeal meaningless, an exercise in futility and constituted bad faith breach of contract and breach of contract.

(433) Plaintiff's appeal was rendered void ab initio and thereby vitiated Plaintiff's October 21, 2022, dismissal as the entire proceeding and/or process is rendered void from the beginning.

(434) Plaintiff's October 21, 2022, dismissal is legally ineffective and void.

**Plaintiff Would Have Graduated and Excelled in a Career as a Doctor of Veterinary Medicine**

(435) Throughout Plaintiff's entire academic career, Plaintiff has demonstrated academic excellence in her studies including High School. Undergraduate and her graduate degree was obtained from a Medical School wherein she graduated with a 4.0 GPA and was inducted in the John Hopkins Honor Society.

(436) Plaintiff possessed many intrinsic qualities and characteristics that would have made her excel as a Doctor of Veterinary Medicine, many of which are not possessed by the so called "professional in their presentation" students Defendants deem desirable, but Defendants refused to provide Plaintiff a chance and ruined her chances for a career in medicine and/or as a Doctor of Veterinary of Medicine for petty reasons amounting to nothing more than, or at most, petty personality conflicts with Director Carney and/or Dean Anderson both of whom had strong input or decision making authority as it related to Plaintiff's dismissal.

(437) Plaintiff would have received passing marks and graduated from Defendants' Doctorate of Veterinary Medicine program had she been afforded a fair and reasonable opportunity to complete the program and had Defendants complied with their contractual obligation owed to Plaintiff.

(438) Defendants' actions and/or omissions and/or the actions and/or omissions of its employees, agents and/or independent contractors are the proximate cause and cause in fact of Plaintiffs' injuries for which Defendants are responsible.

(439) Defendants' liability is joint and several.

(440) Plaintiff is entitled to a declaration that her October 1, 2022, dismissal is void, void ab initio and therefor vitiated.

(441) Plaintiff has suffered economic damages in the form of loss of future income, decreased earning capacity, loss of tuition paid to the University, incidental losses and damages resulting from purchase of books, materials, moving expenses, living expenses and/or other costs and expenses associated with Plaintiff's efforts to attend Defendants.

(442) Plaintiff is entitled to reinstatement, injunctive relief, monetary damages, punitive damages, lost income, loss of future income, decreased earning capacity, exemplary damages, treble damages, attorney's fees and costs.

**Claim III**

**Section 504 of the Rehabilitation Act of 1973**

(443) Plaintiff adopts, reiterates and incorporates by reference all information contained in each of the separately numbered ¶¶ (1) through (442).

(444) The ADAAA of 2008 governs inclusion of ASD and Aspergers as covered disabilities under Section 504 of the Rehabilitation Act, thereby, effectively creating the viability of this claim in 2008 and is subject to the 4-year statute of limitations set forth in 28 U.S.C 1658(a) governing all federal claims created after December 1, 1990.

(445) Defendants expressly adopted into and/or agreed to afford Plaintiff protection and relief under Section 504 of the Rehabilitation Act of 1973 codified at 29 U.S.C. § 794. See (Ex, 1, Appendix E on p. 117). Pursuant to Tenn.R.Civ.P. 10.03, Exhibit # 1 is the August 2022 Student Handbook (comprised of 156 pages) and the entire document is in possession of both Defendants and may also be accessed on Defendants' website.

(446) Defendants' student handbook states "[a]ll personnel and educational activities conducted by Lincoln Memorial University are subject to the equal opportunity, affirmative action, and nondiscrimination provisions of . . . Section 504 of the Rehabilitation Act of 1973, as amended by U.S.C. Title 41 . . .." Id.

(447) Plaintiff was a qualified individual with a disability at the time of the events giving rise to this litigation.

(447) Plaintiff was diagnosed with ASD and/or Aspergers and disclosed that disability to Defendants prior to and/or at the commencement of Plaintiff's first day of classes.

(449) Plaintiff was excluded from participation in her classes and/or dismissed/expulsed from Defendants program due solely to her covered disability in violation of Section 504 of the Rehabilitation Act.

(450) Defendants received federal funds and/or specifically opted in the protections and relief afforded under Section 504 of the Rehabilitation Act as set forth in the Student Handbook. See (Ex. 1, Appendix E, P. 117).

(451) Plaintiff was dismissed/expulsed solely based on her disability.

(452) Defendants' proffered reasons for her dismissal/expulsion were a pretext for discrimination in violation of Section 504 of the Rehabilitation Act.

(453) Defendants targeted Plaintiff early during her first semester due to her disability and the manner in which her disability impacted her communication/behaviors that Defendants viewed as unprofessional, annoying and not LMU/CVM material.

(454) Defendants' discrimination was the cause in fact and the proximate cause of Plaintiff's injuries and/or damages.

(455) Plaintiff has suffered economic damages in the form of loss of future income, decreased earning capacity, loss of tuition paid to the University, incidental losses and damages resulting from purchase of books, materials, moving expenses, living expenses and/or other costs and expenses associated with Plaintiff's efforts to attend Defendants.

(456) Plaintiff is entitled to compensatory damages, punitive damages, lost income, decreased earning capacity, loss of future income, attorney's fees and costs.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff requests the following relief and damages from Defendants:

(1) Compensatory Damages including, but not limited to, economic damages and/or loss of future income of $2,500,000;

(2) Punitive damages of $5,000,000;

(3) Injunctive Relief in the form of Plaintiff's reinstatement to the Doctorate of Veterinary Medicine program;

(4) Declaration that Plaintiff's October 21, 2022, dismissal is void.

(5) Attorney's Fees;

(6) Costs of this Litigation;

(7) That all issue be tried by a jury; and

(8) Any other general and/or specific relief to which Plaintiff may be entitled.

Respectfully submitted,

R. Douglas Hanson, II, Esq (#17387)
2000 Aureum Drive, # 379
Franklin, Tennessee 37067
r.douglashanson@aol.com
Phone: 850-687-9823

*Attorney for Plaintiff*



# STUDENT HANDBOOK

LMU

College *of* Veterinary Medicine
LINCOLN MEMORIAL UNIVERSITY

**August 2022**

**Volume X**

Case 3:25-cv-00564-TAV-MJD Document 1-1 Filed 11/20/25 Page 61 of 64
PageID #: 64

# APPENDIX E: EQUAL OPPORTUNITY STATEMENT

In support of the Mission Statement and the principles on which it is based, Lincoln Memorial University is committed to equal opportunity for all students, staff, and faculty and to nondiscrimination in the recruitment, admission, and retention of students and the recruitment, hiring, promotion, and retention of faculty and staff. Lincoln Memorial University reaffirms its commitment to personnel and educational policies that comply with the requirement applicable to equal opportunity/affirmative action laws, directives, executive orders, and regulations to the effect that no person at Lincoln Memorial University shall, on the basis of race, color, ethnicity, religion, sex, national origin, age, ancestry, disability, veteran status, sexual orientation, marital status, parental status, gender, gender identity, gender expression, and genetic information, or any other class protected by applicable law, be excluded from participating in, or be denied benefits of, any employment or educational opportunity.

All personnel and educational activities conducted by Lincoln Memorial University are subject to the equal opportunity, affirmative action, and nondiscrimination provisions of the Equal Pay Act of 1963; Title VII of the Civil Rights Act of 1964, as amended by H.R. 1746; the Civil Rights Act of 1991; Title IX of the Educational Amendments of 1972; Section 504 of the Rehabilitation Act of 1973, as amended by U.S.C. Title 41, Chapter 60; the Age Discrimination Act of 1967, as amended in 1974 and 1982; Executive Order 11246 (1965), amended by Executive Order 11375 (1968); the Americans With Disabilities Act of 1990 (PL101-336), as amended, and Section 402 of the Vietnam-Era Veterans Readjustment Assistance Act of 1972, amended in 1974.

All members of the University community bear responsibility for compliance with the equal opportunity, affirmative action, and nondiscrimination policies disseminated through the current University publications, including, but not limited to the LMU Student Handbook (ONLINE), the Lincoln Memorial University Undergraduate Catalog, other program catalogs and handbooks, and the Lincoln Memorial University Employee Handbook. Compliance is monitored and reported annually through the offices of the Vice President for Academic Affairs, the Vice President for Academic Services and Institutional Effectiveness, the Vice President and Dean for Enrollment and Student Affairs, the Office of Institutional Compliance, and the Office of Human Resources.


Case 3:25-cv-00564-TAV-MJD Document 1-1 Filed 11/20/25 Page 62 of 64
PageID #: 65

## Kyra Blake Freeman

**To:** Doug Hanson
**Subject:** RE: Print Job, Exhibit # 2

---------- Forwarded message ---------
From: **Carney, Kimberly** <kimberly.carney@lmunet.edu>
Date: Tue, Nov 1, 2022 at 1:07 PM
Subject: RE: Student Appeals Committee Decision
To: Mackenzie Hunt <mackenziehunt97@gmail.com>

Dear Mackenzie,

I will copy below part of the text from the SPC letter to the Dean that explains the concerns noted by the committee. Please note that in number 1, they are aware of your excused status for those, but that those excused absences were received after the beginning of the shifts.

These concerns were based from the Ethical, Attitudinal, and Behavioral Requirements section around pages 46-47 of the CVM Student Handbook_August2022.

I will reiterate that the Dean's decision is final and the appeal committee upheld the process.

1. missed animal care shifts and subsequent falsification of medical records
2. her lack of professionalism in both emails and text messages with faculty and students after repeated feedback from administration on how to properly conduct professional communications
3. absence of growth in level of professionalism after she had been warned by the administration and provided a specific plan for improvement.

The SPC's main concern was the level of immaturity displayed by Ms. Hunt and capacity for professionalism noted over the past two months. She does not seem to grasp what she has done wrong and is not able to accept personal responsibility for her actions. Although she acknowledges the importance of integrity in the veterinary professional, based on the level of inaccurate answers provided by Ms. Hunt, the SPC found the majority of her accounts mendacious and therefore not in accordance with the LMU-CVM high standards of professional behavior.

LMU
Richard A. Gillespie
College of Veterinary Medicine
LINCOLN MEMORIAL UNIVERSITY

**Kimberly Carney, DVM, MPH, DACVPM, CPH, CHES**

Associate Dean for Student Affairs and Admissions

Office: CVM 315
kimberly.carney@LMUnet.edu

Appointment Booking Link

**Lincoln Memorial University**

**Richard A. Gillespie College of Veterinary Medicine**
Work: 423.869.6822 | Cell: 423.441.0313
6965 Cumberland Gap Parkway, Harrogate, TN 37752
203 DeBusk Farm Drive, Ewing, VA 24248

vetmed.LMUnet.edu